No. 27,915.

THE STATE OF KANSAS, ex rel. WILLIAM A. SMITH, Attorney-general, *Plaintiff*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF JOHNSON, *Defendant*.

(260 Pac. 985.)

SYLLABUS BY THE COURT.

1. MANDAMUS—*Alternative Writ—Facts in Affidavit as Part of Writ.* Where a motion is made to obtain an alternative writ of mandamus supported by an affidavit in which the facts are fully stated and upon which an alternative writ is issued which refers specifically to the facts set forth in the motion and affidavit, such facts may be considered a part of the alternative writ.

2. HIGHWAYS—*Improvement—Application of Statute to Roads Not Established.* The provisions for the improvement of county roads as prescribed in R. S. 68-703, and chapter 251 of the Laws of 1927, are interpreted to cover not only improvements of established roads but also parts of the road petitioned for where no previously laid-out roads exist.

3. SAME—*Improvement—Duty of Board to Proceed After Final Order.* Where a road is petitioned for and the petition has been found by the board of county commissioners to be adequate and valid, and the road of public utility, and an order for the improvement has been made by the board after a hearing had upon due notice to all persons interested, and the order has become a finality, it is the duty of the board to proceed without delay in making the improvement.

4. SAME—*Improvement—Excuse for Delay.* In the instant case the excuses presented by the board for refusing to proceed with the improvement of a road legally ordered, are held to be no justification for the refusal and that plaintiff is entitled to a peremptory writ commanding the board to proceed without delay in making the improvements.

Original proceeding in mandamus. Opinion filed November 5, 1927. Writ allowed.

*William A. Smith,* attorney-general, *Roland Boynton,* assistant attorney-general, *Chauncey B. Little* and *Judson S. West,* both of Olathe, for the plaintiff.

*Howard Payne,* county attorney, for the defendant; *C. L. Randall* and *J. W. Parker,* both of Olathe, of counsel.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding to compel the board of county commissioners of Johnson county to proceed with

Highways, 29 C. J. pp. 589 n. 76 new, 598 n. 47 new. Madamus, 38 C J. pp. 863 n. 48, 913 n. 42; 18 R. C. L. 341.

the construction and improvement of a highway spoken of as the Santa Fe trail from the city of Olathe to a point near the southwest corner of Johnson county. In the verified application for a writ of mandamus, it was alleged that a petition for the building and improvement of the road containing the names of 148 petitioners, which constituted more than 51 per cent of the resident landowners, owning more than 35 per cent of the land within the district defined by the petition, was presented to the board in the early part of May, 1926. The petition described the route of the road, the terminal points, and prayed that the road be graded, drained and surfaced with concrete or brick, eighteen feet wide, with all necessary bridges and culverts, in accordance with plans and specifications and estimates approved by the state highway engineer, and by the United States secretary of agriculture, if federal aid should be granted.

On May 19, 1926, the board made an order upon its journal that the petitioners and others interested should be notified that a meeting would be held on June 2, 1926, for the hearing and consideration of the petitions. The county engineer of the county had duly certified that on a careful examination of the petition for the road he found it contained the names of more than 51 per cent of the resident landowners owning more than 35 per cent of the land within the benefit district. On June 2, 1926, the board, finding that due and proper notice of the meeting had been given, proceeded with the hearing and took the same under advisement until June 11, 1926, at a regular meeting of the board, when it allowed the petition and entered upon its journal that the improvement as prayed for was a public utility, that the petition was adequate and in all respects in compliance with law, and it entered an order that the road be improved as prayed for in the petition, that the county engineer cause an accurate survey to be made of the road, together with the profile thereof, and also a map of the district, together with plans and specifications, with an estimate of the cost of such improvements, and that after final approval of such plans, specifications and estimates by the state highway engineer, they be filed with the county clerk as required by law. It was further ordered that the board cause the expense of improving the road to be met from time to time by warrants directed upon the fund created therefor, and that the cost be apportioned and bonds issued to pay the same according to law, and that the board should cause to be con-

State, *ex rel.,* v. Johnson County Comm'rs.

structed all necessary bridges upon the road, the cost of which exceeded $2,000 or should have a span of twenty feet or more, to be paid for by Johnson county out of the county bridge fund, and with the assistance of such federal aid as might be granted. It was further alleged that pursuant to the order the engineer of the county proceeded to make and report to the board, surveys, maps, profiles, plans and specifications and estimates, as. ordered and reported the same many months ago to the defendant board. It was alleged that the defendant board has neglected and still neglects to proceed with the improvement of the road as is its legal duty to do. In the alternative writ which was issued reference was made to the averments in the affidavit as to the petition and orders mentioned reciting that all surveys, maps, profiles and estimates had been duly made and filed, but that the board had failed and neglected to further proceed, although often requested and demanded so to do.

The board in its answer set up a formal general denial and then proceeded to admit that the petition mentioned had been duly presented to it for consideration, admitted that they had referred it to the county engineer and that upon the examination he had reported that the petition contained more than 51 per cent of the landowners in the benefit district and more than 35 per cent of the land included in the district, that they thereupon passed a resolution in which they found the preliminary proceedings had been legally taken, approved the petition and ordered a survey of the road, with profile thereof, and a map of the district together with plans and specifications of the improvement and an estimate of the cost thereof. The board then alleged that the route of the proposed road was not definitely set out in the alternative writ, that eight miles of the proposed route is overland where no highway exists, and that because of that fact the petition was invalid and that therefore the peremptory writ should not issue. There was an averment, too, that in an examination of the petition after the order was made it was found that it did not contain 51 per cent of the resident landowners owning 35 per cent of the land in the district. The board added an allegation to the effect that a formal system of public highways had been adopted in the county in which roads on other lines were under construction and which could be used in reaching a point on the west line of the county which would serve the purpose of travel better than would the proposed road, and that those

under construction had entailed a very large expense during the last two or three years, and had caused a heavy burden of taxation. Another allegation was to the effect that the proposed road is impracticable and not in accord with the general system of improvement which the county had adopted. The answer concluded with a denial that the plans and specifications, maps, profile and estimate, for the proposed highway had ever been filed in the office of the county clerk, and that the survey had not been completed.

Upon the filing of the answer the plaintiff moved for the issuance of a peremptory writ contending that the answer does not set forth any legal reason or excuse for failing to do as directed in the alternative writ.

The first question raised by the board is that the alternative writ is defective in that it does not set out in detail the route of the road, the character of the improvement, the resolution of the board ordering the improvement, nor show the legality of the preliminary steps taken by the board prior to the order for the improvement. It appears that the alternative writ makes special reference to the affidavit filed upon which it was based, reciting that it had been made to appear therein that the petition had been presented, that all the necessary preliminary proceedings had been had, that the resolution and order of the board had been made, together with a survey; that an order had been made approving the petition, and a finding made that all necessary legal proceedings had been taken; that they had ordered the engineer of the county to cause the survey of the road to be made, together with profile, maps, plans and specifications and an estimate of the cost; that these had been approved by the state highway commissioner, and that all these things had been done. This was followed by an averment that they had failed and neglected to proceed further although often requested to do so, and the command of the writ was that the board proceed with the improvement of the road so petitioned for and ordered or show cause on a day named.

It is argued that as the writ and return constitute the pleadings in a mandamus action, the court cannot look to the affidavit or verified application on which the writ was based. The affidavit as shown contains full recital of the facts, and the alternative writ refers to the facts shown by the affidavit. This verified application is a paper and a part of the record in the case. Thereby the defendant was as fully informed of the grounds upon which relief was sought as if

all the recitals of the affidavit had been copied into the writ. By plain reference they became a part of the writ. The board could not have been confused or hampered in its defense by the fact that its duties and obligations which it was alleged they had failed and neglected to perform, were stated in one or two papers. In effect, however, the writ included all the averments of the affidavit to which reference was made. Moreover the board did not challenge the sufficiency of the writ by a motion to quash, but filed an answer in which the material allegations of the plaintiff were admitted. True, the answer contained a general denial, but in view of the further averments containing admissions of the steps that had been taken and the statement of the excuses offered in justification of the refusal of the board to proceed with the improvement, the general denial must be regarded as nugatory. As shown in *Stanley v. State Board of Medical Registration and Examination,* just decided (post, p. 518), the questions open to consideration were whether the excuses affirmatively pleaded by the board as a justification for its refusal are legally sufficient.

Another objection is that the statute under which the order was made, including R. S. 68-701 and 68-703, is not applicable to the proposed road and does not warrant the improvement ordered because a portion thereof, about eight miles, is new construction, and it is argued that it cannot be regarded as an improvement of an existing road and that the improvement does not imply the laying out and improvement of a new road. While the statute speaks of the improvement of roads and the designation of roads to be improved, it is plain from the several provisions that the term improvement is not confined to established roads. The statute contemplates that the project petitioned for may be in part upon a line where no road has been previously laid out. It is not practical or necessary to quote the lengthy provisions of the act to meet the plaintiff's objection. The following provisions are sufficient to show that the interpretation contended for by the board cannot be upheld. After speaking of the improvement petitioned for and found to be of public utility, it proceeds:

". . . When the petition filed for the improvement of a road describes a road which has not been legally established as a public road, or when additional right of way is necessary for the construction of the type or types of roads specified in the petition, or when unsurmountable obstacles are encountered on the route described in the petition, or when it is found necessary to relocate the road for the purpose of eliminating sharp turns or other dangerous places,

the board of county commissioners shall by order of said board lay out, alter or widen a public road and may vacate an existing road," etc.   (R. S. 68-703.)

Then follows a provision giving the board authority to condemn land so far as it may be necessary to carry out the purposes of the statute.

Since the revision of 1923 the legislature has amended the section in some respects, but the provision quoted was reënacted and placed in the amended section without alteration.   (Laws 1927, ch. 251.) The term improvement as used in the statute obviously includes every essential to the building of the type of road petitioned for, whether it is over an established road or over a route where a part of it is not upon a previously established highway.   The board, as seen, may obtain land in order to widen an existing road or may make a deflection from a described route in order to avoid sharp turns, dangerous places or unsurmountable obstacles.   If it is found to be necessary the board may even vacate an established road, constituting a part of the route of the proposed road.   We find no merit in this contention of the board.

The allegations of the answer presented as excuses for failing to proceed with the building of the road, to the effect that the county is engaged in other road projects, the averment that the public can be better accommodated in reaching the west line of the county by other routes than that of the proposed road, and the further one that they now regard the proposed road to be impracticable and would involve great expense, do not any of them afford justification for its refusal to proceed with the improvement.   When the petition had been presented and had been found valid and sufficient after a hearing was had upon due notice, and the board had found the road to be of public utility and had procured the engineer to make a survey with profile, maps, estimates, plans and specifications, and entered upon its journal its approval of the proceedings and an order for the improvement, and that the expense thereof was to come from a fund created therefor, and the order had become a finality, that closed the chapter as to regularity and authority and it became at once the duty of the board to proceed with the construction of the road with reasonable promptitude.   The fact that other roads are contemplated or in course of construction affords no reason for abandoning or refusing to proceed with the road petitioned for and ordered built.   It was said in *State, ex rel., v. Franklin County Comm'rs*, ante, p. 141, 256 Pac. 716, in answer to like excuses:

State, *ex rel.,* v. Johnson County Comm'rs.

"The board has determined the public utility of the road and it need not wait to be prompted to execute a work of determined public utility or hold back on account of opposition."

Nor is it any excuse that the board is now of the opinion that the road so ordered to be constructed is not practicable or that some other road is more desirable. All these questions were finally determined when valid preliminary proceedings were had and the improvement ordered. Whatever may have been the real reason which led the board to balk on the improvement or refuse to proceed as the law prescribes on the beaten path, those and like excuses afford no justification for its refusal. No steps have ever been taken to vacate the order made, nor has it ever been adjudged to be invalid by any tribunal. As illustrating the lack of merit in the excuses made by the board, it is sufficient to refer to the following authorities: *State, ex rel., v. Linn County,* 113 Kan. 203, 213 Pac. 1062; *State, ex rel., v. Franklin County,* 115 Kan. 531, 223 Pac. 261; *State, ex rel., v. Linn County Comm'rs,* 120 Kan. 356, 243 Pac. 539; *State, ex rel., v. Leavenworth County Comm'rs,* 121 Kan. 148, 245 Pac. 1051; *State, ex rel., v. Franklin County Comm'rs,* 124 Kan. 141, 256 Pac. 716. The further averment in the answer that the survey, map, profile, estimates, plans and specifications have not been placed on file with the county clerk is not a valid excuse for the refusal of the board. If the county engineer has failed to place these on file, it is within the province and power of the board to require it to be done. Nothing in the record shows an unwillingness of the county engineer to do his part. As tending to show that this was not the ground of refusal, it is made to appear by the records of the state highway commission, that the chairman of the county board and the county engineer appeared before the highway commission in July following the making of the order and applied for federal aid and it was then agreed between the highway commission and the county officers that the commission would advance sufficient funds to build about six miles of highway from funds then available, and that the county would proceed with grading and making culverts on the highway in question.

The judgment of the court will be that the peremptory writ issue commanding the board to proceed forthwith with the construction of the highway and jurisdiction will be retained for the purpose of making the judgment effective in case further orders become necessary. It is so ordered.